Thank you. You may be seated. Our next case for today is 4150991, Jamie Schnitker v. Springfield Urban League, Inc. For the appellant, we have Timothy Sassone, or how do you pronounce that, sir? Okay, all right. Thank you, Mr. Sassone. And then Ms. Colleen Lawless. Are you ready to proceed, counsel? Thank you. Good morning, and may it please the court. Your Honor, at its heart, this is a case about jury instructions. All of our points on appeal deal with those jury instructions. And our main point is simply this. The fourth element of IPI 250.02 requires a finding of causation. A finding of but-for causation. That's the way that it is written. The instruction 15 and 16 given on race and religious discrimination do not include that fourth element. Do not include a requirement of finding causation. What it includes instead, what they include instead, is a motivated factor paragraph, which is not a substitute for a finding of causation under Illinois law. I know that the... Counsel, I'm sorry to stop you so early, but let me ask you this. During the research, it appears that there are two ways of proving this, direct and indirect. And does the motivating factor instruction come in only when we're going the direct method? How does that work? Your Honor, the motivating factor language actually is not precedent in the state of Illinois. It is seen in many federal cases. And it is seen certainly in the Seventh Circuit jury instructions that are used in Title VII cases. But there is no precedent for it in Illinois. So my answer to your question would be that the motivating factor language simply shouldn't be in the instruction at all, that's what the instructions have to say. So our position is, again, that under the fourth element of 250.02, there has to be that language about because of. Another important point is that... But in the federal cases, how does that shake out, the direct versus indirect in motivating and when you use that? That was exactly what I was going to say next, Your Honor. Thank you. When you look at instruction 3.01 in the Seventh Circuit jury instructions, there actually is that because of language used twice in the same instruction. There are two separate sentences that use that language. So the answer is that whether you're going forward under Title VII with a Seventh Circuit jury instruction 3.01 in this situation, or whether you're using IPI 250.02, either way you have to have that because of language. And again, in 3.01, that because of language is used twice in two sentences in the same paragraph. So you don't have a situation, even in the federal cases, where a motivating factor paragraph is being used without any reference to because of language. Even in the federal cases, even in Title VII, you have to have that language incorporated. And it simply wasn't there. So even if the 3.01 instruction were appropriate in this case and it's our position that it wasn't, even then you would have had to have used that language and it wasn't there. So absent that requirement, absent that element, what do we have left? What do we have to look at? We have the motivating factor language and as I said, under Illinois law, there is no case which says that that's appropriate. In an Illinois state case, under the state act that's at issue here, what we end up with is some language being used in other places in the instructions. And that's the argument that the FLE presents. For example, the opening sentence of Instructions 15 and 16 say that the plaintiff is making a certain claim and that she was discriminated against because of something happening. Now that's the opening sentence of an instruction that is simply stating what the plaintiff is claiming. That's not requiring the jury to make a finding. It's simply informing the jury, look, this is what the plaintiff is saying in this case. You have to go down to the five elements of the instruction. That's what the jury is being told to look at when it's making a decision. We know from the Dillon case that you have laypersons on a jury who, without those jury instructions, are not capable of separating the issues. At least that's what the law states. That's what we presume about juries. We presume that juries are not capable of distinguishing relevant from irrelevant information. That's another reason we use the jury instructions as the Dillon case discusses. And so we have to have those five elements there. We have to have that fourth element of causation there. There's an argument from the appellee that Instruction 17, which we also have a problem with, and I'll get to that argument in a moment, starts with the first sentence using the because of language. But again, and this is from the Netto case, you can't cure a problem in an instruction by looking at another sentence or another phrase or clause somewhere else in the instruction package. Especially when it comes to verdict directors, you've got to have your elements right there for the jury because under the Dillon case, we know that that's what enables the jury to look at the issues that have to be decided in a particular case. On Instruction 17, which I said I would get to, I'll get to now, that in particular is problematic in our view because there's no precedent for it anywhere. Even in the Woods case, that wasn't a case about whether the jury instruction was appropriate. The Woods case is distinguishable on numerous grounds, and we talk about this in our opening brief and more so in our reply brief. But the main thing I want to emphasize about Woods is it's a Northern District of Illinois case. It wasn't about jury instructions or whether it was appropriate. Really what the court was doing was saying that, look, when a jury is looking at an appropriately instructed case, it can make determinations about other things that happen to other employees and still find discrimination. And that's understood, but that doesn't change the fact that you have in this case a jury that wasn't properly instructed. And that's the problem that we have here. Well, was there evidence in the case that there were, let me make sure I'm remembering this correctly, non-Pentecostal white workers who were treated fairly? Wasn't that somewhat of a defense? Look, we didn't do this to these people, and so wasn't the instruction appropriate based on that? That was part of the defense. That is correct, Your Honor, but that does not make the instruction appropriate, because there's no precedent for it anywhere. It's a non-pattern instruction, and its only support that was offered by the appellee is the Woods case, which is easily distinguishable. You're correct. That was a defense. But simply because a particular defense or argument is being made doesn't entitle the plaintiff to a particular jury instruction about that point. If the appellee could find a case or find support or find an Illinois pattern instruction that allows for this, or even a Seventh Circuit instruction that allows for this, I think my position would be much different. But at the state level, most of these instructions are going to be non-IPI, right? A lot of them are, that's right, Your Honor. Right, and so I guess in my experience as a trial court judge, I'm envisioning a situation where the court has to craft the instructions to go with the evidence that has come in in the case and to address issues that might be raised. So it seems like that would leave a huge missing piece. I mean, how was the jury to handle that information? Didn't they need instruction on that? I mean, given that was a defense? They didn't need instruction on that, Your Honor, because that instruction, when matched with the motivating factor language that was in 15 and 16, continued to take the case away from the requirement that the jury find that the acts were taken because of her race or because of her religion. What if you didn't have the motivating factor instruction? Does that change your opinion? No, the instruction would still be problematic, whether it contained the motivating factor language or not. No, no, I'm saying taking out the motivating factor language and just the instruction about if others who are similarly situated as to the plaintiff were treated fairly, that doesn't mean that the plaintiff was necessarily treated fairly. I understand. We would make the same argument that looking at instruction number 17, there's still no precedent for it and there's no need for it. I don't believe that every defense or every position taken by either plaintiff or defendant in a particular case necessarily requires or justifies a jury instruction. I think we need to be able to look somewhere for support for that. And I just don't see that either in the state or federal cases other than Woods, which as I've discussed was not a case about jury instructions and is easily distinguishable. So my answer would be that with or without the motivating factor language, we would make the same argument about instruction number 17. And do you agree that they only mention Woods in the context of the fact that they represented that instruction was given in Woods? They didn't really argue that Woods decided that issue. They were just saying this instruction was given. Exactly. And that's another reason why we argued to the court that Woods is not a case that has a lot of persuasive value because that issue wasn't decided by the Woods court. Neither side said it was right or wrong. That was part of the discussion of the case, what the case was about. And so it has less value for that reason as well. Another thing that we do discuss in both the opening and reply brief is that there is some confusion. This does get back, Your Honor, to your opening question about direct and indirect evidence. A lot of the cases that are decided by the affilee deals with situations where a plaintiff is seeking to defeat summary judgment in a Title VII case. And the standards that apply on summary judgment and what needs to be shown to defeat summary judgment, of course, those standards are much different than what you have when you actually have a trial with jury instructions and with each side putting on all of their evidence as opposed to the standard review that applies on summary judgment. And so we discuss this briefly in our reply brief as well as in the opening brief. But those cases are distinguishable on that basis. They're also Title VII cases, but the main thing is that those deal with summary judgment. Here we had an entire trial with evidence presented by both sides and a jury that was instructed. So getting back to where I started at the beginning, Your Honors, this is a case about jury instructions. The question comes down to whether the verdict directors needed to include the fourth element that we see in IPI 250.02. And even if Seventh Circuit Instruction 3.01 were appropriate, even then, that still has to be there and it wasn't present. So for these reasons and the problem with Instruction 17 that I mentioned earlier, we would ask the Court to reverse and remand so that the case can be retried to a jury that is given proper jury instructions. Thank you for your time, Your Honors. Thank you, Counsel. You'll have time on rebuttal. Ms. Lawless, you may proceed. Thank you. May it please the Court. Good morning, Counsel. My name is Kylie Lawless and I represent the plaintiff, Appellee Jamie Schnicker. The exact issues in this case were not very clear as it relates to the appellant's brief. It did not identify exactly what the issues were. However, now, Counsel has suggested that it was the appellee that confused the method of proof with causation. I would suggest that by looking at the appellant's original brief, it was in the first pages of their brief where it identifies that there are two methods to be able to prove the case. And those were the direct and indirect methods, Justice White, that you were asking about. That was actually brought up by the appellant and suggested that not only do you have to do but for proximate causation. That was their argument identified within the appellant's brief. And it was the appellee's brief where it identified that that's not the standard. But for causation, if that were the standard, the IPI 250.02 would have been used as a pattern instruction. But it's conceded by the defendant in this case that that pattern instruction does not apply in this case because it's a discrimination case. And so, while there's a lot of discussion regarding that pattern instruction, it was modified because everyone conceded, as well as the defendant, based on their tendered instruction, that it did not apply here because proximate causation was not required. But didn't they submit a proposed instruction with the but-for causation language in it? No, I would actually suggest the only causation that they stated was that in the fourth element it said, did not rehire plaintiff because of her religion. That is the only. However, 250.02, there's an additional fifth element in the pattern instruction which identifies proximate cause. And what would be required of that? And that was omitted in the defendant's instruction. So, as I stated in the brief, they have waived that argument as relates to but-for proximate causation. If the defendant was going to take the position... Okay, wait a minute. I thought your argument was that they didn't offer a definition of but-for and so that couldn't have been used. There were actually two different waiver arguments, and you are correct in stating that. The first one was that by looking at the pattern instruction, there is a fifth element in the pattern instruction. And what's the language of the fifth element? In the pattern instruction, and I'm actually citing from the appellant's brief, page 21, it identifies that in 250.02, the pattern instruction, there's a fifth element that says that the reason stated in paragraph 3rd, which is what we're commonly referring to as the fourth element in this case now, above, that there was a proximate cause of her discharge and resulting damages. So, by removing the fifth element that's identified in that pattern instruction, the defendant removed proximate causation and but-for causation. And I would suggest and argue that, once again, if proximate cause was required in Illinois or in the Seventh Circuit as relates to status-based discrimination claims, then the retaliatory discharge pattern instruction would instruct us to use that for employment discrimination claims. And in support further of the argument that but-for proximate causation is not required in status-based discrimination claims, I would direct the court to the United States Supreme Court case of U.S. Postal Service v. Aikens, where Justice Rehnquist specifically said the factual inquiry of a Title VII case is whether the defendant intentionally discriminated against the plan. And this is quoting, in other words, is the employer treating some people less favorably than others because of their race, color, religion, sex, or national origin. And then... And doesn't that have that same because of language that they were asserting was necessary? Yes, it does have the same. However, then the court went on to describe what type of evidence would be necessary for that and specifically did not provide that but-for proximate cause is necessary. Now, was this a direct or an indirect case? That, I believe, was actually because where the confusion can come in with direct and indirect cases is that with direct proof, you can do that based on clear admissions by the defendant that they had a discriminatory motive or you can provide it through a mosaic of circumstantial evidence. And there is significant case law within the United States Supreme Court, Seventh Circuit, as well as the Seventh Circuit Tarugi case, which is a 2013 Seventh Circuit case, where in that case, it's the one that's the most on point to this case because that would actually... Do you agree that the direct is where you use the motivating factor language, that you don't see that in the indirect, the pretext cases? The motivating factor language is actually used when there's a mixed motive, where you have evidence of both, direct and indirect evidence. And in that situation, you are then instructing the jury that you don't have to find either one, that you can actually use both. And what was the direct evidence in this case? The direct evidence, and I would say that we actually found under both ways of the direct. As I stated, there's the first one that you had true admissions by the defendant or the decision makers. And in this case, we had admissions by Anne Burys was the supervisor for the plaintiff throughout the entire case, or throughout her employment. And she was also the person who was supervising and making the decisions and was also the owner of the church that was at issue in this case. In that, Anne Burys testified that she specifically told Lily Jasper, who was the chief operating officer, as well as Nina Harris as the chief executive officer, that her other white, non-Pentecostal employees at the Jacksonville site were discriminating against her and also making complaints of discrimination against them as it relates to their race and religion. So how is that direct evidence on behalf of Ms. Snichter? Now that would be direct evidence because it would show that there was a discriminatory motive. And that is the difference in this case that I think that there may be a confusion as it relates to what's necessary. The Supreme Court, as well as the Seventh Circuit, have found that in order for the plaintiff to prevail on a status base, that you just need to offer evidence which provides an inference of discriminatory intent. And they provide four different avenues to be able to do that. And the first one would be suspicious timing. And this is, once again, from the Cherokee 2013 Seventh Circuit case, which is actually applying the Illinois law of the Human Rights Act because this case originally was under an Illinois Human Rights Act and then it was removed to federal court. So in that, the plaintiff was required to offer, first, suspicious timing. And I would suggest in this case we provided suspicious timing. Well, counsel, let me cut right to the chase of what's troubling me in this case. The plaintiff is claiming that she was not rehired by the defendant because she was white and because she was not Pentecostal. Isn't that correct? Yes. The instructions never set forth that claim that the plaintiff has to prove. I believe that if you review the 15, 16, and 17. Counsel, English is my mother tongue. I have the instructions right here before me. Okay. Where is the, because she was white or because she was not Pentecostal, where does that language appear in the instructions? The first instruction, 15 and 16, that we're commonly referred to specifically state the plaintiff is claiming that she was not hired because of her race. But it's not an element. You can see it's not one of the elements. Yes. So if I'm a juror, where am I told that the plaintiff has to prove that in order for me to return a verdict for her? And in this case, I have suggested and I do believe that the law supports that the defendant has. Counsel. Yes. Let me repeat my question because you're not close to answering it. If I'm a juror, the plaintiff has to prove that because of element before I can return a verdict for her. In the fourth element, it does say that defendant, that the plaintiff was. Rehired similarly situated non-Caucasian teachers and other personnel with less seniority, less education. Yes. That's it? And then. Is that the closest you come? Yes. And then also in instruction number 17, it specifically states you must decide whether defendant discriminated against plaintiff because of her race or That's the. What I'm looking to are the elements that must be proven, the causation elements. The issues in instruction, like in criminal cases, this is what the focus should be. And if I'm a juror, that because of language or anything close to it isn't present, is it? Well, because of language we used in the beginning instruction, which was not part of the pattern. It's not present, is it? Well, because of is also not required. And that is the argument. It's not present, is it? You are correct, Your Honor. It is not present as well as part of. Why did you put it in there? As part of the fourth element. I did not include it because because of was not necessary. I had already stated it in the beginning of the instruction. Why should we accept your argument that it's not necessary? Because the defendant's tendered instruction as part of the standard of review in this case, it's not only finding that the instruction may have been faulty, but also finding that the defendant was seriously prejudiced by it. And by looking at the instructions. Well, if an element you have to prove isn't present, why isn't that serious prejudice? The element, and I do not suggest, and the law does not provide that it is necessary to state that it was because of. The language actually from the Illinois Human Rights Act says on the basis of. The defendant was citing. Okay. Well, where is on the basis of language here? The causation language. Essentially, they did this bad thing because I'm white. Yes. Some variation of that language you could use. Where is that present in the issues instruction? It would be present in the beginning part, and then it also provided additional elements. I have it in front of me. Which numbered issues is that present in? It is not present specifically as it states as because of. But what I am trying to convey to the court is that the beginning part says that she was not rehired because of her race. And then the fourth element identifies three additional elements that otherwise I did not have to prove. I did not have to prove that she rehired similarly situated non-Caucasian teachers. And who had less experience and less education. It was going to be sufficient to simply be able to provide circumstantial evidence of an inference of discrimination. And I do believe, and based on the defendant's failure to identify and define because of. You mean because of has to be defined because without a definition the jury wouldn't know what because of means? That is actually the argument that was just presented by the appellant as well as looking at the Seventh Circuit pattern instruction. The Seventh Circuit has stated that if you're going to use because of, you have to provide a definition. Does that make any sense? See, we're not bound to follow the Seventh Circuit decision. So my question is, does that make any sense? Well, the Zadirica, Illinois Supreme Court case I would say does suggest that and it always has been followed and there has not been any. You mean the Supreme Court of Illinois has said because of requires a definition because jurors can't understand it? No, and similarly, Your Honor, has not said it doesn't. Well, I'm just asking you now. I mean, it's a matter of language. It's a matter of practice. Why do jurors need to be told what the phrase because of means? Why isn't that something that a normal adult would understand? Because there are different causation standards, which we've discussed, and one of them would be proximate cause but for causation. And when you say that that is the standard, you have to define that, and that's identified in Illinois pattern instructions, which is 250.02. When it is a but for, which is what the defendants are asserting, when it is but for, you have to identify what proximate cause is, and there's a correlating instruction that defines it. That is not in any of the instructions here because that was not what the position of the defendant was at the time of trial. When you look at the instructions, it is very clear they were not operating on because of, and I will say that the reason that because of is defined is that a lay person doesn't know what because of means as it relates to status-based discrimination cases. The United States Supreme Court has told us that, and you are required to follow that when it relates to status-based discrimination claims. And in this case, and in the U.S. Postal Service Aikens case, it specifically provides that you have to, in other words, the employer is treating some people. Well, it seems to me you're confusing the nature of evidence necessary to be presented with the instructions of the jury on how to evaluate this evidence. No. I think as it relates to the Aikens case that I'm referring to, the Aikens case was specifically identifying, and if I could, Your Honor, it was specifically saying that a prima facie case, why are we even talking about that? That's what they said. Justice Rehnquist said, because this case was fully tried on the merits, it's surprising to find the parties and the court of appeals are still addressing the question whether Aikens made out a prima facie case. We think by framing that issue, they have unnecessarily invaded the ultimate question. And that's when they went on to state exactly what the question is for the jury. And it specifically said, is whether defendant intentionally discriminated against the plaintiff? Under no scenario does that say because of proximate cause. And I will suggest to the court that in other cases, in Hennessy, which is a Seventh Circuit case, as well as Sedgwick Claims Management, which is a 2014 Northern District, Illinois case, where there were both status-based as well as retaliatory claims, there's two different standards. Even accepting all of this as accurate, which I'm not sure it is, it seems to me that maybe it's time to clean up this language so that people who merely speak the language, as opposed to technicians, could understand it. And we'll say, see, here's the claim. She was discriminated against because she's white. Or she's discriminated against in another case because she's black. If you agree with that, find her favor. Why should that be essentially what this court should say? Well, because there is established law that you do have to find that the discriminatory intent was there based on what you just suggested, but it doesn't have to be the proximate cause. And that's what the argument is different in this case. You know, this is my 40th year as a judge, and I just don't understand what you just said. I can't, you know, it's proximate cause, but it doesn't have to be based on race. What does that even mean? Well, and I understand, Your Honor, because there's not very much law on this as relates to the Illinois courts because it was originally always exclusive jurisdiction. How about we clean up this law and put it in an English counsel and make it clear so the litigants and maybe even the jurors can understand what they're supposed to have to resolve? I would suggest that in this case the jury was not confused at all by what they had to find. They had to find that Jamie Schnicker's race and or her religion was a substantial factor as relates to her dissent. Well, I don't even know what that means. It seems to me if her claim is I wasn't hired or rehired because I'm white, I was never told that in the jury instructions. The beginning of the jury instruction 15 and 16 specifically says that's what the claim is, as well as instruction number 17. No, no, the issues instruction. The issues instruction, the one that tells me the things I need to find as a plaintiff doesn't include any of this. And I would direct you then to the fourth element that's in the issues instruction which mine says that defendant rehired similarly situated non-Caucasian teachers and other personnel who had less experience and less education than plaintiff. That's evidence. That's evidence. Hold on one second, Your Honor. Okay, that's where does the, and therefore because I'm white, they didn't hire me. I'm going to get right to that, Your Honor. And I will say that the reason I was specifically stating that was I wanted to direct you then to the Supreme Court, U.S. Supreme Court Aikens case, which specifically found that in order to find a status-based discrimination, in other words, is the employer treating some people less favorably than others because of their race. And that's exactly what the fourth element of my instruction says, is that she was treated differently because defendant maintained and kept less similarly situated non-Caucasian and Pentecostal employees who had less education and less experience than plaintiff. I actually increased my burden as it related to having to prove those specific evidence to be able to recover. And we did because there was four days of evidence, very overwhelming evidence that would provide there was no confusion of the jury, that they knew exactly why Jamie Schnicker was terminated, and it was on the basis of her race and or religion. What would it have hurt to throw in the because of language here? Why didn't you do that? Well, I would say that in hindsight, I wish I would have included the because of in the fourth element because it would have decreased my burden. I wouldn't have had to actually prove less seniority, less education, similar treatment. These are instructions you submitted initially, are they not? Yes, I did. And also what's important. So you voluntarily increased your burden you're telling us as opposed to include the because of language? Now looking back and looking at all of the evidence that was presented, yes, I did. I did increase it, but that's not a basis to be able to say the defendant was prejudiced. And that's what the next start of the standard of review is that's neglected in the wasn't accurately stated. It's actually finding that they were seriously prejudiced by the instruction. And in these instructions and throughout all of the testimony and the closing arguments and everything that was presented to the jury, there was not a single juror that didn't understand what this claim was and that we proved it with overwhelming evidence. And that based on that, I would say that even if this court decided to not follow the other seven circuits, including the most recent Tarugi, which applied Illinois Human Rights Act to this and found based on absolutely not one citation to a case. That is what's important here. Defendants have waived their argument as relates to proximate cause, as relates to because of, as relates to the motivating factor. If you look at that appellant brief, they did not support it with a single case that was on point. It was devoid especially of the motivating factor. It simply said, this isn't followed in Illinois law. But it didn't follow that the Seventh Circuit has repeatedly said it and it came directly from Seventh Circuit pattern instructions. Pattern instructions which defendant offered 13 times in their instructions and it was fine on those instructions, but I guess it wasn't okay on this one. And there's no case law to suggest that the Illinois court should not apply Title VII law when interpreting the Illinois Human Rights Act. The Zadirica case... Counsel, you're out of time. Thank you. You will have more time on rebuttal. Thank you. I'm sorry. No, actually you will. Thank you very much. Once again, may it please the Court. And forgive me, I didn't introduce my colleague, Jerry Lynn Arundel, who was trial counsel in the lower court. The jury was confused and during the jury's deliberations, there actually was a question that was sent back which read, can we have a better explanation of the alternatives to both race and religion? So the notion that the jury wasn't confused is simply incorrect, Your Honors. Also, the notion that anything was waived is incorrect. In the reply brief, we go through in great detail the entire recitation of the objections, the offering of the alternatives. And as I say in the reply brief, it was a textbook example of how you preserve error when it comes to jury instructions. So there was no waiver and we did offer alternatives. Speaking of those alternatives, Your Honors, there was a suggestion that we left out key components. If you look at pages 10 through 12 of our opening brief, you'll actually see our proposed jury instructions set forth. And we do, in fact, include that fourth element. Fourth, that defendant did not rehire plaintiff because of a race. Fourth, that defendant did not rehire plaintiff because of a religion. What about the opposing counsel's statement that there was a fifth element that should have been in there? That's what I was going to get to next, Your Honors. Okay. Your Honor, we do include the fifth element as well in our proposed instructions. And I would refer the court to pages 10 through 12 of our opening brief to verify that we did. What was the fifth element? The fifth element is that plaintiff sustained damages as a result of the defendant's decision not to rehire her. What was the response of the plaintiff at trial to your because of language that you included in your proposed instruction? In the transcript itself, Your Honor, you're not going to find a lot of discussion during the jury instruction conference. You won't find a lot of detail there. I am aware of the circumstances surrounding it. My answer to you would be that we felt that the IPI has the fourth element. Counsel, you're not answering my question. There's an old saw that governs trials. If it ain't in the record, it never happened. Right. What does the record reveal concerning the response of the plaintiff to your intended instruction? I'm sorry, Your Honor. I apologize for not understanding it the first time. Your Honor, the record does show that we state, Mr. Gilbert, lead trial counsel states that the because of language needs to be there. And we recite that in the reply brief. What was the response of the plaintiff to your intended language? Actually, there wasn't a response. The court accepted the instruction as it was offered by the plaintiff. What was the response of the court to your intended language? Oh, I'm sorry. Well, I first asked you for that response. Apparently, there's nothing on the record you're telling me. What is the response of the court to your intended language? Your Honor, I want to make sure I give you an accurate answer. I want to turn to that part of the reply brief. Excuse me. The response given by trial counsel at the time was, it's our position that the instruction should say that she was not rehired because of her race. Or in the alternative, that defendant's reason for terminating the plaintiff is a pretext for discrimination. The plaintiff did have a response, and that was that I have included also the motivating factor language from the Seventh Circuit, the pattern 3.01, the substance of plaintiff's instruction 15 that was just discussed by the defendant, did not change. So they objected to the instruction with the because of language? Is that what you're representing to us? I take it from this, Your Honor, that a plaintiff believes the motivating factor language is appropriate. What did the judge say? Because of language needed to be in there. What did the judge say? The judge says Plaintiff 16 will be given over objection for the same reasons as 15. All right. And the court said, Plaintiff's instruction number 15, IPI 250.02, modified with the Seventh Circuit pattern instruction 3.01, will be given over objection. Okay. And after that... Can you talk a little bit about the Aiken case? Because counsel is representing to us that that basically says that it's not appropriate to use the because of language. I disagree because appellee continually refers and relies upon the Seventh Circuit instruction 3.01, which does use the because of language twice. So even... What about the Aiken case? I don't believe the Aiken case says that you can dispense with the because of language. I don't believe it stands for that proposition, Your Honor. I think in a case such as this one, it is required whether you're going to be in one of our federal courts in Illinois or elsewhere in the Seventh Circuit or whether you're in Illinois under the Act. I see I'm out of time. Again, I would ask the court to reverse and remand for a new trial. Thank you. We'll take this matter under advisement at the end of the process.